William FITZGERALD and Rose Fitzgerald, his wife

v.

NORTHEASTERN HOSPITAL OF PHILADELPHIA.

Civ. A. No. 75–2936.

United States District Court,
E. D. Pennsylvania.

Aug. 27, 1976.

■■■■■■

Lawrence A. Mendelson, Community Legal Services, Law Center Northeast, Philadelphia, Pa., for plaintiffs.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VanARTSDALEN, District Judge.

Plaintiffs seek a class certification under Rule 23(b)(3). The complaint alleges that the defendant, Northeastern Hospital of Philadelphia, violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq., when it obtained from Mrs. Fitzgerald a promissory note in the sum of $516.24, payable in 24 monthly installments, bearing 12% interest per annum, for hospital services rendered to her husband. The proposed class are those other persons who may likewise have been "extended credit" on overdue hospital bills during the statutory period of limitations of one year. See 15 U.S.C. § 1640(e). The estimated class size is 130. Defendant raises substantial legal and factual issues of defense on the merits, and further would seek to assert counterclaims for balances due as to most, if not all, of those who are potential plaintiffs, whether individually or as class members.

Analysis of class action certification issues in Truth in Lending cases in this circuit must commence with Katz v. Carte Blanche Corporation, 496 F.2d 747 (3d Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). In that case, upon allowance of a 28 U.S.C. § 1292(b) interlocutory appeal, the court en banc (Seitz, Aldisert and Adams dissenting), reversed a class action certification in a Truth in Lending case. Rule 23(b)(3) requires a finding "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In Katz, the Third Circuit held the district court's finding of "superiority" erroneous because it lacked "an informed consideration of alternative available methods of adjudication of each issue." Katz, supra at 757. The preferred alternative method was to proceed with an individual test case as to liability which would effectively determine liability as to all potential class members by "collateral estoppel" upon a finding of liability and "stare decisis" if a finding of nonliability. What is not clear from Katz is whether the district court should deny class certification and proceed as an individual action, or simply postpone determination of the class until after liability has been established. Katz, supra at 760 seems to suggest postponing the class action issue, which, however, leaves serious questions as to the dictate of Rule 23(c)(1) to determine class action status "as soon as practical." Postponement would also foreclose potentially interested class members from having any control or "input" into the litigation in the absence of allowance of direct intervention.

Does Katz still authoritatively state the proper procedure for class action determinations in Truth in Lending cases in this circuit? Subsequent to Katz, the statute was substantially amended as to the measure of damages, particularly as to class actions. The statute as originally adopted provided for civil damages of twice the amount of the finance charges with a minimum recovery of $100 and a maximum of $1,000 plus costs and attorney's fees. The 1974 amendment added that actual damages could be recovered. The amendment retained, in the case of an individual action, the provision for twice the amount of the finance charges with the preexisting $100 minimum, $1000 maximum limitations. The amendment to the statute expressly provides that in class actions, liability shall be in "such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640 (Supp.1976). Costs and attorney's fees remain chargeable against the creditor

if found liable. The amendment enumerates certain factors "among other relevant factors" that the court shall consider in assessing the amount of an award. 15 U.S.C. § 1640 (Supp.1976).

■ A review of the amendment, the limited legislative history, and decided cases, reveals that one of the purposes of the amendment was to prevent denial of class action certification solely on the basis of possible catastrophic awards against corporate violators of the Act. *See Agostine v. Sidcon Corporation,* 69 F.R.D. 437, 444–447 (E.D.Pa.1975). Although class actions were expressly contemplated by the amendments, I do not read them as a statement of legislative intent that class actions are to be the generally preferred procedure. Class certification must still be determined by Rule 23 standards on a case by case basis. *Agostine v. Sidcon Corporation, supra* at 444.

The amendment does not address the procedures set forth in *Katz v. Carte Blanche Corporation, supra,* whereby the "superior" procedure is a nonclass action determination of liability. Although *Katz* enunciated for this circuit the applicability of the collateral estoppel doctrine as to class action liability determinations, this doctrine may not be applicable in other circuits. The doctrine of mutuality of estoppel might preclude the use of collateral estoppel. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 182 n. 3, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (Douglas, J., dissenting in part).

Two recent decisions of the Third Circuit Court of Appeals have considered class action certification. *Samuel v. University of Pittsburgh,* 538 F.2d 991 (3d Cir. 1976) reversed a district court decertification of a class after determination of liability. The "unmanageability" of determining individual class member claims did not in and of itself justify decertification. Although the court recognized that there may be circumstances where decertification of a class after determining liability would be proper, *see* n. 4, to decertify simply because of difficulties in determining individual claims constitutes an abuse of discretion. *Samuel, supra* at 996 and n. 5.

■ Less than one month later the same Court of Appeals decided *Link v. Mercedes-Benz of North America, Inc.* (3d Cir. 1976). (slip opinion 75–2195, July 22, 1976). There, the court suggested a district judge "should hesitate determining the class until reasonably assured of the correctness of its ruling . . . ." *Link, supra* at 5. The court based this admonition on the fact that, in the absence of "special factors," such a ruling may not be appealed. The court further stated:

> Thus, after a determination of liability, the district court is free to decertify the class for a proper reason, and unmanageability would be such a circumstance.

*Link, supra* at 7. Curiously, *Link* made no reference to the earlier decided *Samuel* case. It is difficult to read the two cases consistently. One possible conclusion is that while unmanageability may be a basis for decertification, difficulties in determining claims of individual class members do not constitute unmanageability. In view of these two cases, I would hesitate to certify a class where, as here, there would have to be separate factual determinations of a monetary award for each class member. The amendment to the Act may, in the factual context of this case, present more obstacles to class action certification than existed under the earlier version of the Act, despite the apparent attempt to make class action treatment more palatable to the courts.

I would not be unduly concerned with the fact that as a class action, individual members might receive less than the $100.00 minimum to be awarded in the event of a finding of liability in an individual action. That could be adequately taken care of by a proper notice to the class to permit members to "opt-out."[1]

---

1. It should be noted that the prayer for relief specifically requests judgment in favor of each class plaintiff in double the amount of the finance charges, with a minimum of $100 and a maximum of $1,000 per class member. In the event liability is found in favor of the class, there is no minimum or maximum applicable as to individual class members, but there is an

However, I have great concern with the overall limitation of a maximum class recovery of 1% of the net worth of the defendant hospital. The net worth of an ordinary business corporation or commercial business enterprise might be fairly easy to determine, at least for purposes of class action certification so that the potential maximum class recovery could be approximated. It seems to me that in order to make an informed decision on certifying a Truth in Lending class action, some approximate determination of maximum recovery would have to be made, if for no other reason than to permit class members reasonable information upon which to decide whether to "opt-out." Class members should have some basis for determining whether a class action is potentially financially less desirable to them, especially since minimum and maximum damages in an individual action are expressly limited by statute.

In the present case, defendant is a hospital. According to an affidavit filed, it is organized under the Non-Profit Corporation law of Pennsylvania which precludes the making of a profit. It operated for the fiscal year 1975 with a net loss of approximately $346,000.00. The affidavit states that the hospital has no earned surplus, and that although it shows on its books a substantial "fund balance," an unidentified portion thereof was derived from gifts and bequests. Whether these are donations in trust in such a way as to be exempt from any award in this case is not apparent. Defendant's counsel makes the not implausible argument that defendant may have a zero or minus net worth. If a class action is determined, in the event of a finding of liability, a factual determination of defendant's net worth, however such may be defined and determined, would be a prerequisite to any award. Even if the 1% of net worth limitation were not a practical prob-

lem, the "resources" of the hospital would have to be considered in any class action award by express terms of the statute. 15 U.S.C. § 1640(a) (Supp.1976).

Taking into consideration these and other uncertainties as to the amount of an award, if any, that could be made in a class action,[2] I conclude that a class action in this case is inferior to individual action. By an individual action, a plaintiff if successful, is assured of a minimum recovery and the attorney is entitled to a reasonable fee. If actual damages resulted, they can be obtained. The plaintiffs in this case, who filed and are proceeding in forma pauperis and who have not yet paid the principal balance of the hospital bill will not have to assume the costs of class notice, which although relatively small would undoubtedly have to be borne in the first instance by plaintiff's counsel, Community Legal Services.

Rather than postpone class action determination until after a determination on liability, as suggested in *Katz*, the motion will be denied. Postponement would only place potential class members in a state of uncertainty, and would further extend the period of limitations to the class members under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). By denying the motion, class members are free to file individual actions, and are not required to elect whether to "opt-out."

---

overall maximum of $100,000 (more recently amended to $500,000) or 1% of "net worth," whichever is the lesser.

**2.** Query: Does the 1% of "net worth" limitation include actual damages and costs and attorney's fees as a part of "the total recovery?"