**Brad T. BRAME, Pamela Brame and Luther Brame, Plaintiffs,**

**Louis J. Lefkowitz, Attorney General of the State of New York, Plaintiff-Intervenor,**

v.

**RAY BILLS FINANCE CORPORATION, Defendant.**

**No. 75–CV–577.**

United States District Court, N. D. New York.

Nov. 7, 1979.

---

Onondaga Neighborhood Legal Services, Inc., Syracuse, N.Y., for plaintiffs; James M. Baker, Syracuse, N.Y., of counsel.

Scott, Sardano & Pomeranz, Camillus, N.Y., for defendant; Roger Scott, Camillus, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

Plaintiffs,[1] who bring this action pursuant to the Truth in Lending Act ("TILA") and the New York State Banking Law, entered into a consumer credit transaction, on December 11, 1974, with the defendant, a lender licensed under Article IX of the State Banking Law. In Count I of their Complaint, plaintiffs allege that defendant committed various violations of the TILA and the regulations promulgated thereunder ("Regulation Z"). They accordingly seek to recover statutory damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1640(a). In Count II, plaintiffs assert that the violations of the TILA and Regulation Z alleged in Count I also constitute violations of New York Banking Law § 353. They maintain that they are consequently entitled to declaratory and injunctive relief under New York Banking Law § 358, which voids a loan transaction in which the lender has failed to make the disclosures required by § 353.

Presently before the Court are plaintiffs' motions for class certification and for leave to amend their Complaint. In their original Complaint, plaintiffs allege that the Court has jurisdiction over the claims asserted in Count II under the doctrine of pendent jurisdiction. Plaintiffs now desire to amend their Complaint to allege an additional jurisdictional basis for the claims asserted in Count II—that they arise under 28 U.S.C. § 1337. With respect to their motion for class certification, plaintiffs seek certifi-

---

1. The term "plaintiffs" is used throughout this decision to refer to the individual plaintiffs who originally commenced this action—Brad T. Brame, Pamela Brame, and Luther Brame. The Attorney General of the State of New York was permitted to intervene as a plaintiff to defend the validity of New York Banking Law §§ 353, 358 which was challenged by defendant as being violative of the New York State Constitu-

tion. In a ruling issued from the bench on August 23, 1976, Judge Edmund Port upheld the constitutionality, under the New York State Constitution, of these provisions, and granted the State Attorney General's request for judgment. The Attorney General has not participated in any of the subsequent proceedings held in this case.

cation of Count I under Rule 23(b)(3), Fed. R.Civ.P., and of Count II under Rule 23(b)(2). For both counts, plaintiffs seek to represent a class of borrowers who consummated loan transactions with defendant between December 10, 1974 and December 9, 1975, and who received from defendant a standard-form promissory note substantially similar to the one received by plaintiffs.

Before a suit may be maintained as a class action, the named plaintiffs must demonstrate that they satisfy all the prerequisites of Rule 23(a) as well as the requirements of one subdivision of Rule 23(b). *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Rule 23(a) provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The portions of Rule 23(b) relevant here provide:

Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The issues raised herein with respect to certification of Counts I and II are, in many respects, distinct,[2] and, therefore, will be discussed separately. Plaintiffs' motion for leave to amend their Complaint will be considered along with the motion for certification of Count II.

## I. THE TRUTH IN LENDING ACT COUNT

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). *See Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 441 (3d Cir. 1977); *N. C. Freed Co. v. Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1214 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). When a creditor is found to have violated the TILA in connection with a consumer credit transaction, the borrower is entitled to recover a statutory penalty in the amount of twice the finance charge, but not less than $100.00 nor more than $1,000.00. 15 U.S.C. § 1640(a). As originally enacted, the TILA made no reference to

---

**2.** One issue considered under the TILA Count—the ethical propriety of the assumption of costs by plaintiffs' counsel—would also be relevant to the certification of the State Banking Law Count.

class actions, and the legislative history was silent on the use of the class action device to collect statutory penalties under the Act. *See Wilcox v. Commerce Bank*, 474 F.2d 336, 343 n.21 (10th Cir. 1973); Note, *Class Actions Under the Truth in Lending Act*, 83 Yale L.J. 1410, 1411 & n.10 (1974); Note, *Recent Developments in Truth in Lending Class Actions and Proposed Alternatives*, 27 Stan.L.Rev. 101, 106 & n.31 (1974).

The leading case on the maintainability of TILA class actions, prior to the amendment of the statute in 1974, is *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972). In *Ratner*, the alleged class was composed of 130,000 Master Charge credit card holders who, if the class were certified, would each be entitled to the minimum statutory damages of $100.00, thereby making Chemical Bank's potential liability $13 million. Judge Marvin Frankel denied class certification, finding that the superiority requirement of Rule 23(b)(3) was not satisfied. He stated,

> defendant points out that (1) the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive.

54 F.R.D. at 416.

Following the decision in *Ratner*, numerous courts adopted Judge Frankel's reasoning, and denied class certification of TILA actions, emphasizing the potentially devastating effect upon the defendant creditors. *See, e. g. Lindig v. City National Bank*, 59 F.R.D. 154 (S.D.Ohio 1973); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D.Cal. 1972); *Shields v. First National Bank*, 56 F.R.D. 442 (D.Ariz.1972); *Kriger v. European Health Spa, Inc.*, 56 F.R.D. 104 (E.D.Wis. 1972).

In 1974, Congress amended the TILA to meet the concerns expressed by the courts. It limited a creditor's liability in a class action to the lesser of $100,000.00 or one percent of the creditor's net worth, and provided that, as to each member of the class, no minimum recovery was to be applicable. Pub.L.No.93–495, § 408(a), 88 Stat. 1518. In 1976, the ceiling on liability was raised to the lesser of $500,000.00 or one percent of the creditor's net worth. Pub.L. No.94–240, § 4(a), 90 Stat. 260. The purpose of these amendments was twofold: to protect small businesses from catastrophic judgments and to preserve the class action as a mechanism to enforce the provisions of the TILA. Congress wanted to insure that small creditors were not driven out of business, but also wanted a ceiling high enough so that creditors would be motivated to comply with the law. Sen.Rep.No.92–750, 92d Cong. 2d Sess. 7–9 (1972); Sen.Rep.No. 278, 93d Cong. 1st Sess. 14–16, 35–37 (1973); Confer.Rep.No.93–1429, 1974 U.S.Code Cong. & Admin.News, pp. 6148, 6153; Sen. Rep.No.94–590, 1976 U.S.Code Cong. & Admin.News, pp. 431, 438; 4 H. Newberg, *Class Actions* § 7760.05 (1977); *Comment, Truth in Lending and the Federal Class Action*, 22 Vill.L.Rev. 418, 424–25 (1977); Comment, *The Truth in Lending Class Action*, 40 Albany L.Rev. 753, 768–72 (1976).[3]

---

**3.** The Senate Committee on Banking, Housing and Urban Affairs, which reported on the TILA amendments here in question, stated:

> Prior to the *Ratner* decision on February 14, 1972, the courts affirmed 8 Truth in Lending suits as class actions while denying class action status to 3. Since the *Ratner* case, the courts denied 21 Truth in Lending suits class action status while affirming only one and in that case, only after the plaintiffs amended their complaint to sue only for actual dam-

ages. Despite this record, many creditors fear a future court may still certify a Truth in Lending suit for class action status and subject the creditor involved to a potentially staggering penalty. At the same time, it is clear that consumers have not obtained much relief because of the court's reluctance to *impose the unreasonably large minimum* penalties provided for under section 130.

> The purpose of the civil penalties section under Truth in Lending was to provide credi-

Following the adoption of the 1974 amendments, courts have held that a class action brought under the TILA may be certified in an appropriate case. *See, e. g., Goldman v. First National Bank*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525 (D.Md. 1977); *Chevalier v. Baird Savings Association*, 72 F.R.D. 140 (E.D.Pa.1976); *Postow v. Oriental Building Association*, 390 F.Supp. 1130 (D.D.C.1975). The requirements of Rule 23 must still be satisfied, and class certification will be determined on a case-by-case basis. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir. 1975); *Fitzgerald v. Northeastern Hospital*, 418 F.Supp. 1041, 1043 (E.D.Pa.1976).

■ It appears clear that the first three prerequisites of Rule 23(a) are satisfied in the present case. It is stated, in an affidavit of defendant's president, that there are 2,798 loan accounts in the class which plaintiffs wish to certify. A class of that size is so numerous that joinder of all members is impracticable. Rule 23(a)(1). In addition, there are questions of law or fact common to all members of the proposed class. Rule 23(a)(2). The class, as defined by plaintiffs, includes all those who received, during a one-year period, a standard-form promissory note substantially similar to the one received by plaintiffs, and, therefore, there is a common legal question as to whether defendant's standard-form promissory note violates the disclosure requirements of the TILA and Regulation Z. Also, the claims or defenses of the representative parties are typical of the claims or defenses of the class. Rule 23(a)(3). In their Complaint, the named plaintiffs have alleged ten specific disclosure violations committed by defendant, and of those alleged violations, eight were contained in the pre-printed portions of the defendant's form. Since all class members would be able to assert a claim, based on those same eight alleged violations, the named plaintiffs' claim can properly be regarded as typical.

■ Much of the dispute between the parties over the certification of Count I centers upon the requirement of Rule 23(a)(4)—that the representative parties will fairly and adequately protect the interests of the class. This requirement is of critical importance in all class actions. Because of due process considerations, an absent class member will be bound by a judgment entered in an action only if his interests have been adequately represented. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Dierks v. Thompson*, 414 F.2d 453, 456 (1st Cir. 1969); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1765, at 617–18 (1972). The necessary adequacy of representation depends upon the presence of two factors: (1) the representative parties must not have conflicting interests with the unnamed class members, and (2) the attorney representing the class must be qualified, experienced, and generally able to conduct the litigation. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968); *Wallace v. McDonald*, 369 F.Supp. 180, 188 (E.D.N.Y.1973).

Defendant vigorously contends that these factors have not been satisfied in this case. While conceding that plaintiffs' attorneys have sufficient legal experience and intellectual competence to represent the class, defendant argues that plaintiffs' attorneys

tors with a meaningful incentive to comply with the law without relying upon an extensive new bureaucracy. However, the Committee feels this objective can be achieved without subjecting creditors to enormous penalties for violations which do not involve actual damages and may be of a technical nature. Putting a reasonable limit on a creditor's maximum class action liability would seem to be in the best interests of both creditors and consumers.

Accordingly, the Committee again decided to place an aggregate limitation on a creditor's class action liability for violations not involving actual damages.
Sen.Rep.No.278, 93d Cong., 1st Sess. 14–15 (1973).

are not ethically competent to do so in that they have agreed to advance the costs of this litigation, and will look to the named plaintiffs for reimbursement only if they ultimately prevail, and recover those expenses from the defendant. Defendant also contends that the interests of the representative parties are antagonistic to the interests of the unnamed class members, because the named plaintiffs (1) refuse to bear the cost of notice themselves, and (2) insist upon receiving the statutory penalty that is recoverable in an individual TILA action rather than being satisfied with a pro rata share of any award which may be granted to the class. The issue concerning plaintiffs' refusal to bear the notice costs will be considered along with the question of the ethical propriety of their attorneys' advancing these and other costs without requiring their clients to remain ultimately liable.

## A. ETHICAL CONSIDERATIONS

■ Rule 23(c)(2) provides that when a class action is brought under subdivision (b)(3), individual notice must be given to all class members who can be identified through reasonable effort. In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court held that the cost of notice must be borne by the plaintiff, and that a preliminary hearing on the merits could not be held to determine whether it would be proper to shift part of the notice costs to the defendant. In certain cases, lower courts have refused to certify class actions, because the named plaintiffs lacked the capacity to finance notice costs or other litigation expenses. *National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620 (S.D. N.Y.1974); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427 (W.D.Mo.1973). *See also P.D.Q. Inc. of Miami v. Nissan Motor Corp.*, 61 F.R.D. 372 (S.D.Fla.1973) (size of class is limited because of named plaintiffs' inability to finance cost of notice to all members of a larger class). In the present case, the plaintiffs' counsel—Onondaga Neighborhood Legal Services (ONLS), an organization that provides free legal services to indigents—has agreed to advance all

litigation expenses, and, therefore, the unwillingness (or inability) of the named plaintiffs to provide the necessary financing does not render them inadequate class representatives. *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 78 F.R.D. 622, 627 (W.D.Wash.1978); *Guse v. J. C. Penney Co.*, 409 F.Supp. 28, 31 (E.D. Wis.1976), *rev'd on other grounds*, 562 F.2d 6 (7th Cir. 1977); *Sayre v. Abraham Lincoln Federal Savings & Loan Association*, 65 F.R.D. 379, 383 (E.D.Pa.1974), *modified*, 69 F.R.D. 117 (E.D.Pa.1975). In the present circumstances, the financial status of plaintiffs' counsel might be relevant to the issue of adequacy of representation, *Guse v. J. C. Penney Co., supra*, 409 F.Supp. at 30–31; *Sayre v. Abraham Lincoln Federal Savings & Loan Association, supra*, 65 F.R.D. at 383, but defendant does not challenge the ability of ONLS to advance the funds in question. Defendant does, however, argue that plaintiffs' attorneys are guilty of unethical conduct in agreeing to pay the litigation expenses without an understanding with their clients that the clients will reimburse ONLS for such expenses, regardless of the outcome of this action.

The case law is unclear on the extent to which ethical considerations are relevant to the question of class certification. Some courts have denied class certification motions, at least partly on the basis that the attorneys were guilty of misconduct (particularly solicitation). *Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237 (N.D.Tex. 1972); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 16 Fed.R.Serv.2d 1021 (N.D.Tex.1972); *Taub v. Glickman*, 14 Fed. R.Serv.2d 847 (S.D.N.Y.1970). Certain other courts have held that only the most egregious misconduct will ever arguably justify the denial of class action status. *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972); *Kallen v. Nexus Corp.*, 16 Fed.R.Serv.2d 1016 (N.D.Ill.1972). *See also Kronenberg v. Hotel Governor Clinton, Inc.*, 281 F.Supp. 622 (S.D.N.Y.1968). In addition, while some courts have permitted discovery concerning the possibility of maintenance by plaintiffs' attorneys, *Klein*

*v. Henry S. Miller Residential Services, Inc.,* 82 F.R.D. 6 (N.D.Tex.1978); *Sayre v. Abraham Lincoln Federal Savings & Loan Association, supra,* 65 F.R.D. at 386; *Stavrides v. Mellon National Bank & Trust Co.,* 60 F.R.D. 634 (W.D.Pa.1973), others have not permitted discovery of the fee arrangements between the representative parties and their counsel. *Sanderson v. Winner,* 507 F.2d 477, 480 (10th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *In re Nissan Motor Corp. Antitrust Litigation,* 22 Fed.R.Serv.2d 63 (S.D.Fla.1975); *Kleinman v. Sibley,* 21 Fed.R.Serv.2d 62 (E.D.Pa.1975).

■ This Court believes that the ethical competence of attorneys desiring to represent a class is relevant to the question of adequacy of representation, but that not all breaches of the Code of Professional Responsibility will necessarily require the denial of class action status. The seriousness of the particular breach and the possibility of prejudice to the class will have to be evaluated.[4]

■ The Code of Professional Responsibility permits an attorney to advance litigation expenses to a client, but only if the client remains ultimately liable for such expenses. DR 5–103(B), ABA Code of Professional Responsibility, provides:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

The principle embodied in DR 5–103(B) applies to class actions as well as to suits brought on behalf of a single individual. ABA Committee on Ethics and Professional

Responsibility, Informal Opinion 1283 (1973). An exception to this principle has been recognized with respect to the assumption of costs by a legal services office which provides free legal services to indigents. ABA Committee on Ethics and Professional Responsibility, Informal Opinion 1361 (1976) provides:

> You have inquired whether a Legal Service Office which is funded entirely by federal and state government grants may ethically assume ultimate responsibility for litigation costs which are not waived by *in forma pauperis* procedures. You state that none of the clients of your office pay legal fees. We assume, then, that all of your clients are poor persons eligible for free legal services. You indicate that your reason for making the inquiry is at least in part concern caused by this Committee's Informal Opinion 1283 dealing with the obligation of clients to assume the ultimate responsibility for costs in class action suits.
>
> That Opinion did not deal with the assumption of responsibility for costs by clients served by Legal Services Offices. It goes without saying that poor clients who are eligible for free legal services, should not be deprived of the necessary preparation for litigation or the access to remedy of a class action suit because they are unable to assume the ultimate responsibility for out-of-pocket costs. If this were the case they would not be receiving the legal representation to which they are entitled. There is nothing unethical in your office's conduct in advancing such costs in the first instance and assuming the ultimate responsibility for such costs if there is no recovery of costs in the litigation. The Committee does not find a violation of DR 5–103(B) since it is the Legal Aid Society and not the lawyers who advances the monies. The Legal Aid Society may expend public or charitable funds for these purposes.

---

4. In cases where attorneys guilty of misconduct withdraw and are replaced by ethically competent counsel, class certification should normally be allowed, provided that the other criteria of Rule 23 have been satisfied. *See Korn v.*

*Franchard Corp.,* 456 F.2d 1206, 1211–12 (2d Cir. 1972); *duPont Glore Forgan Inc. v. American Telephone & Telegraph Co.,* 69 F.R.D. 481, 483–84 (S.D.N.Y.1975).

Specifically, in respect to class action suits, an individual action initiated by your office for one of its clients or a group of its clients may be converted to a class action even though the responsibility for the costs must be assumed by your office, provided the conversion to a class action is done in the furtherance of the interest of the client or clients on whose behalf you initiated the suit.

Defendant maintains that Informal Opinion 1361 is not applicable to the present case, because this Opinion is based on the assumption that the clients of the legal services office are poor persons eligible for free legal services while one of the named plaintiffs here—Luther Brame—evidently does not fit the financial eligibility criteria of ONLS. In an affidavit submitted on this motion, the principal attorney representing plaintiffs admits that Luther Brame was over the ONLS eligibility guidelines at the time the Complaint was filed.[5] He states that an application was made to the Onondaga County Bar Association in an attempt to secure private representation for Mr. Brame, but that the two attorneys to whom the case was referred refused to accept it. With respect to their decision not to require Mr. Brame to assume ultimate responsibility for litigation expenses, plaintiffs' attorneys maintain that a person, not poor enough to satisfy the income eligibility guidelines of a legal services program, may be too poor to finance the notice costs in a class action suit.

 Since Luther Brame is evidently not a poor person eligible for free legal services, it appears that ONLS's decision to bear the costs of this suit may technically not be within the letter of Informal Opinion 1361. However, the Court does not believe that the underlying rationale of DR 5–103(B) and Informal Opinion 1361 has been violated. The basic purpose behind DR 5–103(B) is to prevent an attorney from acquiring a financial interest in litigation which might interfere with his exercise of independent professional judgment on behalf of his client. See EC 5–1, 5–7, 5–8, ABA Code of Professional Responsibility. Cf. H. Drinker, Legal Ethics 178 (1953); ABA Committee on Ethics and Professional Responsibility, Informal Opinion 889 (1965).[6] In the present case, plaintiffs' attorneys have not personally acquired a financial stake in the litigation since public or charitable funds, and not the personal funds of plaintiffs' attorneys, are being advanced to pay the expenses in question. In this regard, it is noted that the reason given by Informal Opinion 1361 for not finding a violation of DR 5–103(B), when a legal services office assumes ultimate responsibility for litigation expenses, is that "it is the Legal Aid Society and not the lawyers who advances the monies." This reasoning would apply here even though one of the named plaintiffs may not be a poor person eligible for free legal services. Hence, the Court finds that if a breach of DR 5–103(B) has occurred, it is technical in nature, and the underlying rationale of this rule has not been violated.

Also, the Court believes that the interests of the class members will not be prejudiced by ONLS's assumption of ultimate responsibility for litigation expenses. By obtaining a financial interest in class litigation, it can

---

5. While plaintiffs' attorneys admit that Luther Brame was over the ONLS eligibility guidelines at the time the Complaint was filed, they have refused to provide the defendant with Mr. Brame's precise financial status or information concerning ONLS's eligibility criteria. On an earlier motion, this Court denied defendant's request to compel the serving of answers to interrogatories relating to the financial situation of the named plaintiffs and the eligibility criteria of ONLS on the ground that such information was not relevant to the class certification motion. 76 F.R.D. 25 (N.D.N.Y.1977).

6. Another justification, which has traditionally been given for the rule against maintenance, is that such a practice will result in a greater number of vexatious or frivolous lawsuits. Radin, Maintenance by Champerty, 24 Calif.L. Rev. 48, 72 (1935); 14 C.J.S. Champerty and Maintenance § 3 (1939). It is questionable whether this, in itself, is a sufficient justification for the prohibition on maintenance, in view of the existence of other safeguards against frivolous litigation, such as summary judgment. See Developments in the Law—Class Actions, 89 Harv.L.Rev. 1317, 1622 (1976).

be argued that an attorney might compromise the interests of the class members by prematurely agreeing to a settlement in order to insure that he will recover the costs from the opposing party, and not have to pay them himself. Whatever continuing validity such an argument might have in class actions generally, *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1317, 1622–23 (1976) (author argues that there are additional safeguards which will protect class members from an attorney's possible conflict of interest), the Court feels that it is not applicable here. Since plaintiffs' attorneys are not personally advancing the funds involved, it is unlikely that they will agree to a premature settlement in order to avoid the payment of costs.

 Hence, the Court concludes that inadequacy of representation has not been established by ONLS's agreement to assume ultimate responsibility for litigation expenses. The Court does, however, note that a question may be raised as to whether it is a proper use of public or charitable funds for a legal services organization to finance the costs of a class suit for an individual who does not satisfy the organization's income eligibility guidelines, but this is a matter to be determined by the proper funding authorities, and not by this Court on a motion for class certification.

## B. NAMED PLAINTIFFS' DEMAND FOR INDIVIDUAL DAMAGES

The portion of the TILA authorizing the recovery of damages from a creditor for its failure to make the disclosures required by the Act, provides:

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transac-

tion, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

15 U.S.C. § 1640(a).

Plaintiffs demand to receive the same statutory penalty which they would have recovered if they had brought this suit as an individual action. They contend that § 1640(a), as amended in 1974 and 1976, permits the named plaintiffs in a class suit to recover individual damages under subparagraph (2)(A) while the passive class members share the class award under subparagraph (2)(B). Moreover, plaintiffs maintain that even if their recovery must come from the class award authorized by subparagraph (2)(B), their demand for more than their pro rata share of the award does not make them inadequate class representatives.

*Statutory Construction*

 The starting point in the construction of a statute is to examine the

specific language used. *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978); *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). Subparagraph (2)(A) in § 1640(a) begins with the clause "in the case of an individual action" while subparagraph (2)(B) begins with the phrase "in the case of a class action". These two subparagraphs are joined by the disjunctive "or". Under standard rules of statutory construction, words or phrases connected by a disjunctive are to be given separate meanings, unless the context dictates otherwise. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *FCC v. Pacifica Foundation*, 438 U.S. 726, 739–40, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). Here, the context does not dictate otherwise. Subparagraph (2)(B) clearly limits the *total* recovery in a class action to the lesser of $500,000.00 or one percent of the creditor's net worth. If plaintiffs' interpretation—allowing the class representative a recovery under (2)(A) separate and apart from the (2)(B) class award—were adopted, the potential total recovery in a class suit would be slightly greater than $500,000.00 or one percent of the creditor's net worth. This is contrary to the clear language of subparagraph (2)(B). In addition, the two subparagraphs are inconsistent in that a minimum recovery of $100.00 is applicable to an individual suit under (2)(A) while (2)(B) specifically provides that, in a class action, no minimum recovery is to be applicable to *each* member of the class. It is axiomatic that the named plaintiffs, as class representatives, must be members of the class. *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *DuPree v. United States*, 559 F.2d 1151, 1153 (9th Cir. 1977); *Norman v. Connecticut State Board of Parole*, 458 F.2d 497, 499

(2d Cir. 1972). While plaintiffs argue that the phrase "member of the class" refers only to the passive class members, this is not the terminology used.

The legislative history is silent on the particular issue involved here. The particular passages from committee reports cited by the plaintiffs do not support their position. In particular, plaintiffs quote the following passage (without the portion in brackets) to support their view of the legislative history:

> . . . [consumers can bring individual or class actions against creditors who violate these chapters and recover actual damages plus court costs and reasonable attorney fees.] In addition, in an individual action, a plaintiff is entitled to recover twice the applicable finance charge but not less than $100 nor more than $1,000. In a class action the *members of the class* are entitled to recover such *additional sums* as the court may allow, but not more than $100,000 or 1% of the creditor's net worth, whichever is the lesser.

Sen.Rep.No.278, 93d Cong. 1st Sess. 15 (1973) (emphasis supplied by plaintiffs). When read in context, this passage does not provide support for plaintiffs' contentions. It is clear that the use of the word additional in the last sentence (as well as the use of the word addition in the second sentence) merely refers to statutory awards beyond actual damages.

Plaintiffs further contend that limiting the named plaintiffs' recovery to a share of the class award will frustrate the intent of Congress to encourage the use of class actions as a means of enforcing the TILA. The legislative history of the 1974 and 1976 amendments to the TILA does indicate a Congressional intent to promote the class action as an enforcement tool,[7] but a requirement that the representative parties share in the class award will not emasculate the TILA class action. While some individuals have decided not to pursue TILA class actions when they were required to forsake the recovery of individual penalties, *Bantolina v. Aloha Motors, Inc.*, 75 F.R.D. 26

---

7. *See* pages 574–575 and note 3 *supra.*

(D.Hawaii 1977); *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 10–11 (E.D.Mich. 1976); *Weathersby v. Fireside Thrift Co.*, 5 CCH Consumer Credit Guide ¶ 98,640 (N.D. Cal.1975), several other persons have been willing to forego separate recoveries in order to maintain class actions. *Perry v. Beneficial Finance Co.*, 81 F.R.D. 490, 496 (W.D. N.Y.1979); *Sanchez v. Lowell Lebermann, Inc.*, 79 F.R.D. 21, 24 (W.D.Tex.1978); *Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 589 (N.D.Ill.1977); *Chevalier v. Baird Savings Association, supra*, 72 F.R.D. at 152; *Agostine v. Sidcon Corp.*, 69 F.R.D. 437, 445 (E.D.Pa.1975). *See also Stranger v. American Buyers Club, Inc.*, 445 F.Supp. 790 (S.D.Ill.1978); *Rollins v. Sears, Roebuck & Co.*, 71 F.R.D. 540, 545 (E.D.La.1976). No doubt, there will be a greater incentive to bring class actions if the named plaintiffs are assured of receiving the same damages in a class suit as they would recover in an individual action, but the reported cases reveal that some persons will desire to bring TILA class actions even if they risk the possibility of receiving a smaller penalty themselves.

The Court is particularly reluctant to construe the statute in the manner suggested by the plaintiffs in view of the fact that Congress has adopted another piece of consumer legislation—the Fair Debt Collection Practices Act—which contains a class action provision expressly allowing a separate recovery for the named plaintiffs, 15 U.S.C. § 1692k,[8] while Congress has not amended

the TILA class action provision in a like manner. In 1976, one year before the adoption of the Fair Debt Collection Practices Act, Congress did amend the TILA class action provision, but did not make any changes concerning the recovery to be permitted to a class representative. Congress was evidently aware of the problem involved here as one of the cases dealing with this matter—*Weathersby v. Fireside Thrift Co., supra*—was cited in a Senate Committee Report. Sen.Rep.No.94–590, 1976 U.S. Code Cong. & Admin.News pp. 431, 438. The ceiling on class recovery was raised at that time, but the class action provision was not changed in other respects.

The case law supports this Court's conclusion that subparagraphs (2)(A) and (2)(B) must be read separately. Two courts have so held: *Bantolina v. Aloha Motors, Inc.*, 419 F.Supp. 1116, 1121 (D.Hawaii 1976); *McCoy v. Salem Mortgage Co., supra*, 74 F.R.D. at 10–11. The court in *Bantolina* stated,

> While the statute does not expressly bar such a dichotomized procedure allowing separate recovery for class representatives, neither does it expressly authorize it. This Court will not allow a remedy with so substantial an effect to be used by construing congressional silence as congressional assent. Where Congress could have easily provided for separate statutory recovery for class representatives but failed to do so, this Court will

---

**8.** Title 15 U.S.C. § 1692k(a) provides:

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs. If Congress were to amend the TILA class action provision in a manner comparable to the above provision, this would appear to resolve the problem of antagonistic interests discussed *infra*. *See* Note, *Private Enforcement Under the Fair Debt Collection Practices Act*, 28 Case W.Res.L.Rev. 710, 727–28 (1978).

not so easily engage in judicial legislation.

419 F.Supp. at 1121. Another court— *Weathersby v. Fireside Thrift Co., supra* —assumed that this was the proper construction of the statute. Certain other courts, in dictum, provided support for this view. *Perry v. Beneficial Finance Co., supra,* 81 F.R.D. at 496; *Agostine v. Sidcon Corp., supra,* 69 F.R.D. at 445–46.[9]

Hence, this Court concludes that the named plaintiffs must share in the class recovery under 15 U.S.C. § 1640(a)(2)(B).

*Antagonistic Interests*

▉▉▉▉▉ Further consideration is needed to decide if the class representatives must be limited to a pro rata share of the class award. The TILA does not limit a court as to the manner in which it is to distribute the class award. Since the class members are similarly situated with respect to the TILA violations—i. e., they all received forms with the same allegedly inadequate disclosures—the most logical means of distributing the award is to grant each class member (representing a separate credit transaction) a pro rata share of the award granted to the class.[10] An argument can be made that the named plaintiffs should receive a larger recovery than the passive class members as an incentive to bring the class suit. However, it is permissible for the named plaintiffs to receive more than their pro rata share of the class award only if this does not create the type of conflict that would render them inadequate representative parties.

Two courts expressly held that named plaintiffs, by asking that their individual recoveries not be affected by class certification, raised the possibility that they would be awarded money which would otherwise go to unnamed class members, and, therefore, could not fairly and adequately protect the interests of the class. *McCoy v. Salem Mortgage Co., supra,* 74 F.R.D. at 10–12; *Weathersby v. Fireside Thrift Co., supra.* Two other courts expressed their support for this view in dictum. *Perry v. Beneficial Finance Co., supra,* 81 F.R.D. at 496; *Agostine v. Sidcon Corp., supra,* 69 F.R.D. at 445–46. The courts in *Perry* and *Agostine* found that the named plaintiff in the particular case in question would be an adequate class representative as she had indicated her willingness to accept a pro rata share of the total recovery, but both courts suggested that a different result would have been reached if the named plaintiff were seeking separately measured damages. In addition, in *Chevalier v. Baird Savings Association, supra,* 72 F.R.D. at 152, the court distinguished *Weathersby v. Fireside Thrift Co., supra,* on the ground that, unlike the plaintiffs in *Weathersby,* the class representatives in *Chevalier* were seeking no more than their pro rata share of any recovery. *See also Sarafin v. Sears, Roebuck & Co., supra,* 73 F.R.D. at 589. *Cf. Augusta v. Marshall Motor Co.,* 453 F.Supp. 912, 917–19 (N.D.Ohio 1977). (In a TILA case, the court found that the plaintiff was

---

**9.** Plaintiffs contend that the case of *Haynes v. Logan Furniture Mart, Inc.,* No. 70–C–1827 (N.D.Ill. Orders of January 25, 1975 and May 27, 1975) supports their interpretation of the relevant statutory provisions since the district court there authorized recovery by the named plaintiffs of their individual statutory penalty in addition to the class members' sharing of the $10,000.00 class award. The parties in that case agreed to a Consent Judgment upon which the Court entered its Orders. It does not appear that the issue involved here was raised or litigated in that case, and, therefore, *Haynes* should not be regarded as precedent supporting plaintiffs' position. Moreover, there would not appear to be any bar to a creditor (as in *Haynes*) *voluntarily* agreeing to pay more than that the ceiling on class recovery contained in § 1640(a)(2)(B). The limitation on liability in

class actions was adopted to protect creditors, and an individual creditor can voluntarily agree to waive this protection. It is, no doubt, clear that the creditor in the present case has not agreed to waive the protection provided by the ceiling on class recovery contained in subparagraph (2)(B). (Of course, neither the creditor nor the named plaintiff can waive the rights of unnamed class members, but the rights of passive class members were not infringed by the Orders signed in *Haynes* as the representative parties' recovery did not come from the class award.)

**10.** Another means of distributing the class award would be to scale the recoveries in accordance with the different finance charges.

not an adequate class representative where he was requesting damages for himself, but only injunctive and declaratory relief for others similarly situated.) [11]

On the other hand, the court, in *Vickers v. Home Federal Savings & Loan Association*, 56 A.D.2d 62, 390 N.Y.S.2d 747 (4th Dept. 1977), aff'g, 87 Misc.2d 880, 386 N.Y. S.2d 291 (S.Ct. Monroe Co. 1976), held that a final determination on the question of adequacy of representation in a TILA class action did not have to be made at the outset, and found, at least preliminarily, that the representative parties' demand for full individual statutory penalties did not create such a conflict of interest with the unnamed class members so as to warrant a denial of class certification.[12] In *Bantolina v. Aloha Motors, Inc., supra*, the court refused to allow the named plaintiffs a separate recovery, basing its decision on statutory construction (as previously discussed). The court, nonetheless, stated that if it had allowed the representative parties to recover a separate award, any defects in fair and adequate representation could have been cured by notice to the passive class members, allowing them to opt out. 419 F.Supp. at 1121 n.19.

In urging this Court to allow them to recover more than their pro rata share of the class award, the plaintiffs in the present action cite a number of cases in which the named plaintiff's claim for damages was for a substantially different amount than that of the passive class members. *See, e. g., Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968); *City of New York v. General Motors Corp.*, 60 F.R.D. 393 (S.D.N.Y.1973), rev'd on other grounds, 501 F.2d 639 (2d Cir. 1974); *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45 (D.N.J.1971); *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D. Cal.1967). However, this Court believes that those cases are inapposite. In them, the various class members were allowed different recoveries, because they had suffered different actual damages as a result of the same allegedly illegal conduct. Here actual damages have not been suffered, and statutory penalties are being sought. Unlike the situation presented in the cases cited above, the defendant's allegedly unlawful practices have not had a proportionally greater impact upon some class members than upon others.[13] There is no indication in the above decisions that the recovery of the full damages being sought by the named plaintiffs would have operated to reduce the amount that the remaining class members could receive.[14] The situation here is otherwise.

11. One court—*Rollins v. Sears, Roebuck & Co., supra*, 71 F.R.D. at 545—said that there were serious doubts as to whether plaintiff would be an adequate class representative, because he would receive a greater recovery by pursuing the case as an individual suit than as a class action. The court denied class certification "without some adequate explanation for plaintiff's altruism." *Id.* This Court rejects the approach taken by the *Rollins* court, and adopts the view advanced by the court, in *Sarafin v. Sears, Roebuck & Co., supra*, 73 F.R.D. at 589, where it was stated that "[a]bsent some evidence of impropriety . . ., we do not require an explanation of plaintiffs' choice of a more effective deterrent to a creditor over greater personal gain for themselves."

12. The court in *Vickers* did not decide which fund the named plaintiffs' damages would come out of—the class award authorized by subparagraph (2)(B) or a separate recovery under subparagraph (2)(A).

13. The only differentiation between the passive class members and the named plaintiffs is with respect to the two violations that are not alleged to have been suffered by the class as a whole. While the facts in this regard are unknown, it is possible that some unnamed class members may have been subjected to similar additional violations. In any event, an individual is entitled to only one penalty even if there are multiple violations of the TILA and Regulation Z. 15 U.S.C. § 1640(g); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 880 (7th Cir. 1976).

14. It appears from subsequent proceedings in *Eisen v. Carlisle & Jacquelin*, that many class members would not have received any part of the class award under the scheme of distribution advanced by the plaintiffs and adopted by the district court, but the Second Circuit rejected that method of distribution, and found the class action to be unmanageable. 479 F.2d 1005 (2d Cir. 1973), vacated and remanded on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Plaintiffs also rely upon cases where the type of relief sought or obtained by the named plaintiff was different from that sought or obtained on behalf of the rest of the class as, for instance, where the named plaintiff was permitted to pursue a damage claim for himself, but was only allowed to seek equitable relief for the passive class members. *See, e. g., Manning v. Princeton Consumer Discount Co.*, 390 F.Supp. 320 (E.D.Pa.1975), *aff'd*, 533 F.2d 102 (3d Cir.), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976); *Tober v. Charnita, Inc.*, 58 F.R.D. 74 (M.D.Pa.1973) (damages or rescission were sought in alternative for class members). Those cases are not apposite here since the named plaintiffs in the present suit are seeking the same type of relief for themselves as for the unnamed class members—money damages—but they are seeking a reduced recovery for the passive class members.

Certain other cases cited by the plaintiffs concern class actions brought to secure the preservation and distribution of a common fund. *Berman v. Narragansett Racing Association*, 414 F.2d 311 (1st Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir.), *cert. denied*, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944). In those suits, the courts held that there was not such a conflict of interest so as to bar the fulfillment of the adequacy of representation requirement even though various class members had divergent views as to their rights in the distribution of a fund which might not be sufficient to pay all in full. Those cases are not identical to the present suit. In most common fund cases, the named plaintiffs would be advocating a scheme of distribution that would provide a greater share of the benefits not only for themselves but for a certain group within the class, whose members are similarly situated. Here plaintiffs are asking to be treated differently than all other class members. Moreover, since actual damages are involved in the traditional common fund cases, the suggested scheme

of distribution would normally involve a differentiation among the class members with respect to the manner or degree in which they suffered from defendant's illegal conduct, but here all class members were apparently affected to the same extent by defendant's practices.[15] Nonetheless, the common fund cases are more closely analogous to the present suit than are the ones discussed earlier, and do provide some support for plaintiffs' position. In cases such as *Berman* and *Redmond*, as in the present suit, it is quite possible that the named plaintiffs would receive money that would have gone to other class members if a different distribution scheme had been adopted.

On the other hand, the Court notes that class certification has not always been permitted in situations where class members have conflicting interests as to the apportionment of a limited amount of damages. For example, in *Chestnut Fleet Rentals, Inc. v. Hertz Corp.*, 72 F.R.D. 541, 544–46 (E.D.Pa.1976) and *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 49–51 (D.Del.1974), the courts found that the requirement of adequacy of representation was not met where the named plaintiffs' attempts to maximize their own monetary recoveries would limit the amount of damages left for the passive class members to share.

Even when there are conflicting interests among class members, courts will often permit class certification if the effects of such conflicts can be ameliorated in some manner. One means frequently employed to resolve the problem of conflicting interests is the use of subclasses. *See B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140, 144 (E.D.Pa.1974); *Frankel v. Wyllie & Thornhill, Inc.*, 55 F.R.D. 330, 334 (W.D.Va. 1972); 1 H. Newberg, *Class Actions* § 1120g (1977). Such a device could not be used to resolve any conflicts here since the only class members demanding more than their pro rata share of a potential award are the named plaintiffs.

**15.** The Court need not decide, in the context of this case, how significant these differences between the common fund cases and the present suit are.

Plaintiffs contend that any conflict of interest, which may exist in this case, can be cured by a notice to the passive class members,[16] advising them of the existence of this conflict, and informing them of their right to opt out and bring their own individual actions.[17] However, the Court does not believe that this is an adequate solution to the problem of adequacy of representation in the present case in view of the fact that the named plaintiffs' receipt of the same damages which they would recover in an individual action would serve to drastically reduce the amount remaining for distribution to the unnamed class members. In a TILA class action, a defendant's potential liability is limited to the lesser of $500,000.00 or one percent of the creditor's net worth. Here because of the defendant's small size, the figure representing one percent of its net worth is the applicable limitation. It appears from the consolidated financial statements prepared by the accounting firm of Coopers & Lybrand that the net worth of Ray Bills Finance Corporation for the year ending December 31, 1975 (the year applicable to the class being asserted herein)[18] was $109,617.00.[19] One percent of this figure is $1,096.17.[20] In an individual action, the named plaintiffs would be entitled to recover twice the finance charge on their loan transaction which here would be $834.04. If the named plaintiffs were permitted to recover this sum from the class award, there would be only $262.13 left to divide among the remaining 2,797 loan accounts in the class which plaintiffs seek to have certified. Hence, the named plaintiffs would be taking approximately eighty percent of the total class award. The Court is unwilling to approve the use of notice to the passive class members as a means of curing the conflict of interest presented in these circumstances—where the representative parties would be receiving the overwhelming share of the class recovery. By taking such

---

16. At least one commentator has suggested that the use of such a notice to the passive class members will cure any conflict of interest which may exist where the named plaintiff has demanded his individual statutory penalty. *See* Comment, *Truth in Lending and the Federal Class Action*, 22 Vill.L.Rev. 418, 435–40 (1977).

17. The TILA has a one year statute of limitations, 15 U.S.C. § 1640(e), and therefore, a passive class member would be able to commence a separate lawsuit for recovery of individual damages, after exercising his right to opt out, only if the statute of limitations has been tolled by the commencement of this suit. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that the commencement of a class suit tolls the statute of limitations for all purported members of the class who make timely motions to intervene after class certification has been denied for failure to satisfy the numerosity requirement of Rule 23(a)(1). Several courts have stated that *American Pipe* created a general rule that the statute of limitations will be tolled during the pendency of a class action, *see e. g., Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D. La.1978); *Bantolina v. Aloha Motors, Inc., supra*, 419 F.Supp. at 1121 n.19; *Agostine v. Sidcon Corp., supra*, 69 F.R.D. at 448 n.13, and in reaching this conclusion, they placed particular emphasis upon the statement by the Supreme Court in *Eisen v. Carlisle & Jacquelin, supra*, 417 U.S. at 176 n.13, 94 S.Ct. at 2152 n.13 that the *American Pipe* decision stands for the proposition "that commencement of a class action tolls the applicable statute of limitations as to all members of the class." However, the Second Circuit has read the *American Pipe* opinion narrowly, *Stull v. Bayard*, 561 F.2d 429, 433 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 782–83 (2d Cir. 1977), and it is unclear as to what circumstances will result in the tolling of the statute of limitations when a class suit is brought in this Circuit. It is unnecessary to resolve that matter in this case.

18. As previously indicated, the class which plaintiffs wish to certify would consist of those individuals who entered into loan transactions with the defendant between December 10, 1974 and December 9, 1975.

19. The combined net worth of Ray Bills Finance Corporation and its subsidiary for the year ending December 31, 1975 was slightly less—$98,386.00.

20. This figure represents the maximum class award (provided that the financial statements prepared by Coopers & Lybrand are accepted for purposes of determining defendant's net worth). The actual class award could be less, because § 1640(a) specifically allows the Court to consider various factors in determining the amount to be awarded in a class action.

a large portion of the class award, the named plaintiffs' receipt of individual damages would have a substantial impact on the amount each individual class member would be able to recover.

It is clear that Congress expected class members in a TILA action to often recover only nominal damages, Sen.Rep.No.94–590, 1976. U.S.Code Cong. & Admin.News, pp. 431, 438; 119 Cong.Rec. 25417 (remarks of Sen. Moss); 119 Cong.Rec. 25418 (remarks of Sen. Proxmire),[21] and the Court does not believe that the *de minimis* recovery of individual class members would, in itself, be a bar to certification. *See Fetta v. Sears, Roebuck & Co.,* 77 F.R.D. 411, 413 (D.R.I. 1977); *Sarafin v. Sears, Roebuck & Co., supra,* 73 F.R.D. at 587–88. However, the issue involved here is different than a mere claim of *de minimis* recovery as the named plaintiffs would be taking money away from the unnamed class members, and, because of the small size of the class award in this case, would be significantly reducing the maximum amount which the individual passive class members could expect to receive.

The Court does recognize that plaintiffs dispute the net worth figure contained in the financial statements prepared by Coopers & Lybrand, and contend that the actual net worth of the defendant is between $1,000,000.00 and $2,000,000.00. However, the Court seriously questions the validity of plaintiffs' re-evaluation of defendant's net worth, and doubts whether it would accept any of their proposed revisions.[22] Even if plaintiffs' figures were adopted, the total class award would be only $10,000.00 to $20,000.00. The named plaintiffs, if al-

**21.** The Senate Report, reporting the 1976 amendments to the TILA, stated that "[t]he Committee wishes to avoid any implication that the ceiling on class action recovery is meant to discourage use of the class action device." Sen.Rep.No.94–590, 1976 U.S.Code Cong. & Admin.News, pp. 431, 438.

**22.** Plaintiffs' re-evaluation of defendant's net worth is contained in an affidavit submitted by plaintiffs' principal attorney and is evidently based upon the analysis of an accountant whom they have retained, but whose name and credentials have not been set forth. Defendant has submitted a critique of this analysis prepared by Robert Kehoe, a partner in the accounting firm of Coopers & Lybrand.

Finance receivables appear on the asset side of defendant's balance sheet net of both deferred finance income and an allowance for credit losses. Plaintiffs would disallow the entire deduction for deferred finance income, thereby increasing defendant's net worth by $888,184.00. While acknowledging that the presentation of the defendant comports with traditional finance company accounting methods, plaintiffs contend that its effect is to seriously understate the real value of finance receivables. According to Mr. Kehoe, plaintiffs' position is tantamount to implying that the entire amount of finance receivables, after the allowance for credit losses, is realizable at the balance sheet date. He characterizes such a position as "not only preposterous but gravely erroneous and misleading." *See also Montgomery's Auditing* 208–09, 273 (9th ed. 1975).

Defendant classifies treasury stock of $232,-000.00 as a deduction from stockholders' equity. Plaintiffs would reclassify this item as an asset on defendant's balance sheet, contending that companies in other industries have begun to treat treasury stock as an asset, particularly when a market exists for its resale. Mr. Kehoe says that no market exists for defendant's stock nor is it likely that a market could be created. He terms plaintiffs' position as "totally presumptive, without a basis in fact, and reckless." In *Montgomery's Auditing* 617 (9th ed. 1975), it is stated that "[g]enerally, treasury stock should be considered not an asset of the *issuing company but a reduction of stockhold-*ers' equity. An exception to that rule may arise for treasury stock that has been acquired for the specific purpose of resale to employees or others; . . . ." The mentioned exception would not appear to be applicable here.

The liabilities on defendant's balance sheet include an item for subordinated long-term debentures payable. Plaintiffs believe that a significant portion of the debentures may be owned by the person or persons who control defendant's equity securities. If that is found to be so, plaintiffs contend that the debentures should not be treated as a liability in determining defendant's net worth. According to the authors of *Montgomery's Auditing* 660 (9th ed. 1975), the SEC has refused to accept the classification of long-term debentures as capital rather than as a liability (except with respect to capital notes issued by commercial banks), and the accounting profession has generally agreed with the SEC's position. Mr. Kehoe terms plaintiffs' suggestion as "the essence of capriciousness and totally presumptive," and says that "there is no basis in form or in substance in the instant case to treat debentures held by equity shareholders as capital."

lowed to recover their full individual penalty, would still be taking a substantial share of the class award,[23] and the Court would not approve the use of notice as a means of curing this conflict of interest.

The Court need not decide whether the use of a properly drafted notice could cure problems of adequacy of representation where the potential maximum class award is substantially greater than it is here. The Court merely holds that, in the circumstances presented by this case, plaintiffs' demand for their individual statutory penalty renders them inadequate class representatives.

Since plaintiffs have not satisfied Rule 23(a)(4), it is unnecessary to decide if the requirements of Rule 23(b)(3) have been fulfilled.[24]

23. If each of the named plaintiffs were allowed to recover a separate penalty of twice the finance charge ($834.04), their share of the class award would be even greater (and if the net worth figure obtained from the financial statements prepared by Coopers & Lybrand is accepted, their recovery would totally consume the class award). This Court has recently held, in Brown v. Interlakes Financial Corp., 78–CV–124 (N.D.N.Y. August 22, 1979), that joint obligors are not entitled to separate TILA penalties. However, the Second Circuit has not yet decided this question, and the courts in other circuits are about equally divided. Compare Milhollin v. Ford Motor Credit Co., 588 F.2d 753 (9th Cir. 1978) (one recovery for an individual credit transaction); Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir. 1976) (same); Vines v. Hodges, 422 F.Supp. 1292 (D.D.C.1976) (same); and In re Wilson, 411 F.Supp. 751 (S.D. Ohio 1975) (same) with Davis v. United Companies Mortgage & Investment of Gretna, Inc., 551 F.2d 971 (5th Cir. 1977) (separate recovery for each obligor); Mirabal v. General Motors Acceptance Corp., 537 F.2d 871 (7th Cir. 1976) (same); Tarplain v. Baker Ford, Inc., 466 F.Supp. 1340 (D.R.I.1979) (same); and Cadmus v. Commercial Credit Plan, Inc., 437 F.Supp. 1018 (D.Del.1977) (same).

24. If the named plaintiffs had agreed to forego the recovery of individual damages, it is likely that the Court would have found the requirements of Rule 23(b)(3) satisfied in this case. Defendant does not seriously dispute the fact that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. With respect to the requirement that a class action be superior to other available methods for the fair and efficient adjudication of the controversy, defendant's principal argument as to why this prerequisite is not fulfilled is that the recovery per individual class member would be de minimis (according to defendant's calculations, between $.02 and $.39 per class member). Defendant maintains that, because individual recovery would be de minimis unnamed class members have an interest in controlling the prosecution or defense of individual suits, and furthermore, the use of the class action device in this case would make the litigation unmanageable.

The Court believes that the superiority requirement could be satisfied here despite the prospect of a nominal damage recovery for individual class members. As previously indicated, Congress contemplated such recoveries in a TILA class action, see page 586 and note 21, supra, and the interest of unnamed class members in bringing individual suits could be protected by a properly drafted notice, advising them of their right to opt out. See Fetta v. Sears, Roebuck & Co., supra, 77 F.R.D. at 413–14; Sarafin v. Sears, Roebuck & Co., supra, 73 F.R.D. at 588–89; Chevalier v. Baird Savings Association, supra, 72 F.R.D. at 153; Agostine v. Sidcon Corp., supra, 69 F.R.D. at 448 n.13. Even if it were determined that the statute of limitations was not tolled by the commencement of this action (thereby barring unnamed class members from bringing their own suits), see note 17 supra, the superiority requirement could still be met here, because the individual class members would be receiving the maximum recovery allowable in the circumstances. (However, this would not be true if the named plaintiffs were permitted to recover their full individual penalty out of the class award, because the unnamed class members would then not be receiving the maximum amount that could be recovered after the running of the statute of limitations. Instead, the passive class members would be able to receive a greater recovery if different persons, not demanding individual damages, were to serve as representative parties).

With respect to unmanageability, defendant contends that the administrative costs of this action would be excessive in relation to the damages to be awarded the class. While some courts have regarded this as a relevant factor to consider in ruling upon a request for certification under Rule 23(b)(3), Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1010, 1016–18 (2d Cir. 1973), vacated and remanded on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Partain v. First National Bank, 59 F.R.D. 56, 61 (M.D.Ala.1973), the Court does not believe that this factor should be regarded as critical here. Congress must necessarily have contemplated that TILA class actions would have high cost/recovery ratios. Moreover, the actual costs of administering this case as a class action (which would be closely pegged to the cost of first class postage

## II. THE STATE BANKING LAW COUNT

Plaintiffs originally contended that this Court has pendent jurisdiction over the claims asserted under the New York State Banking Law. They now maintain that there is federal question jurisdiction over those claims since the State Banking Law incorporates the disclosure requirements of the Federal TILA. Plaintiffs accordingly seek, pursuant to Rule 15(a), leave to amend their Complaint[25] to add an additional jurisdictional basis for the claims asserted in Count II—28 U.S.C. § 1337 which grants the district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." The Court will first consider plaintiffs' motion for leave to amend their Complaint since it will be necessary to decide the appropriateness of exercising pendent jurisdiction only if federal question jurisdiction is not present.

## A. JURISDICTION UNDER 28 U.S.C. § 1337

 The policy of the federal rules is to freely grant leave to amend pleadings. Since defendant would not be prejudiced in its ability to defend against this lawsuit should plaintiffs' Rule 15(a) motion be granted, this Court would normally permit the Complaint to be amended. *See, e. g., Holdridge v. Heyer-Schulte Corp.*, 440 F.Supp. 1088, 1092 (N.D.N.Y.1977). However, the legal sufficiency of a proposed amendment, as well as prejudice to the opposing party, may properly be considered on a motion made under Rule 15(a). *Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp. 344, 345 (E.D.N.Y.1974); *Horwitt v. Movado Watch Agency, Inc.*, 62 F.R.D. 5, 6–7 (S.D.N.Y.1974); 3 *Moore's Federal Practice* ¶ 15.08[4] at 15–105 to 15–110 (2d ed. 1978). It is particularly appropriate to do so in a case such as the present one where the underlying issues have already been briefed by the parties. Therefore, the Court, in deciding whether to grant leave to amend, will determine the legal sufficiency of the new jurisdictional allegation.

The phrase "arising under" in 28 U.S.C. § 1337 has been interpreted in the same manner as the identical phrase in the general federal question statute, 28 U.S.C. § 1331, *Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560, 561 n.1 (1st Cir. 1976); *Garrett v. Time-D.C., Inc.*, 502 F.2d 627, 629 (9th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975); *Russo v. Kirby*, 453 F.2d 548, 551 n.2 (2d Cir. 1971), and, therefore, the Court will consider cases construing both statutory provisions.

One often-quoted test for determining the scope of jurisdiction is Justice Holmes' formulation that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). However, the Holmes'

for the notice to be given to all class members) would not, in and of themselves, be high. Also, such costs would not consume the class award as they could probably be taxed against the defendant under 15 U.S.C. § 1640(a)(3) if plaintiffs ultimately prevailed.

Defendant further contends that class certification would create burdensome demands on Court time, and that the District Court would be jammed with large numbers of individual suits by class members opting out. The Court does not believe that the supervision of this case as a class action would entail an excessive expenditure of judicial resources. Also, while some class members might choose to opt out and bring their own suits, the Court doubts that large numbers would do so. *See Bantolina v. Aloha Motors, Inc., supra*, 419 F.Supp. at 1121–22 n.19. In any event, such suits would not jam the Court, since liability could probably be established under collateral estoppel principles if the named plaintiffs prevailed in the present action.

**25.** Plaintiffs seek the assessment of costs, including attorneys' fees, against the defendant to cover the additional expense that was incurred by plaintiffs' counsel in responding to a lengthy affidavit in which defendant's attorney requested that numerous conditions be imposed upon plaintiffs should their Rule 15(a) motion be granted. While the Court believes that most of defendant's requests are not the type of conditions that would be imposed if leave to amend had been granted, it does not feel that it would be appropriate to assess costs and attorneys' fees on this motion.

test is not exclusive, and, in certain limited circumstances, federal question jurisdiction has been recognized over causes of action created by state law.[26] *See generally* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 879–90 (2d ed. 1973); Greene, *Hybird State Law in the Federal Courts,* 83 Harv.L.Rev. 289 (1969); Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law,* 115 U.Pa.L.Rev. 890 (1967).

The leading case involving the recognition of federal question jurisdiction over state-created causes of action is *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). In *Smith,* a shareholder of a trust company brought suit to enjoin the company from investing in certain federal bonds on the ground that the act authorizing the issuance of such bonds was unconstitutional, and that the investment in such bonds by the corporation would be an investment in an unlawful security. The cause of action in *Smith,* which was based upon the fiduciary duty owed by the corporation's directors to its stockholders, was created by state law. Nonetheless, the Court sustained federal question jurisdiction, because the controversy depended upon the determination of the constitutionality of a federal statute. The Court stated:

> The general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision.

255 U.S. at 199, 41 S.Ct. at 245.

Defendant contends that the *Smith* case has been overruled by subsequent decisions, in particular *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) and *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933). However, this Court believes that those cases can be reconciled with *Smith.* In both *Gully* and *Russell,* the attempt to found federal jurisdiction was based upon the need to obtain federal permission—*Gully* involved the situation where states could tax national banks only to the extent allowed by act of Congress, and *Russell* involved the situation where the treasurer of Puerto Rico was authorized, by a federal statute, to bring a suit at law, rather than a summary proceeding, to collect a territorial tax. The federal issue in both cases could be regarded as more remote than in *Smith.* In particular, the Court in *Gully* said that "[t]he most one can say is that a question of federal law is lurking in the background . . . ." 299 U.S. at 117, 57 S.Ct. at 99–100.

Another case which might be regarded as inconsistent with *Smith* is *Moore v. Chesapeake & Ohio Railway Co.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934). One cause of action asserted by the plaintiff in *Moore* was based upon a Kentucky statute for injuries suffered in intrastate commerce. Under the state statute, no employee would be held guilty of contributory negligence or assumption of risk where a violation of the Federal Safety Appliance Act contributed to the employee's injury. The Court stated that "a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of the duty imposed by the federal statute" is not to be regarded as a suit arising under the laws of the United States. 291 U.S. at 214, 54 S.Ct. at 406. While it is difficult to reconcile the language used in *Moore* with the *Smith* decision, it is possible (although the decision makes nothing of the point, *see* Greene, *supra,* at 324 n. 147) to distinguish *Moore* on the ground that violation of the Federal Safety Appliance Act merely negates the defenses of contributory negligence and assumption of risk, and under the traditional well-pleaded Complaint rule, the plaintiff

---

**26.** There are also occasions when federal jurisdiction has been denied although federal law created the cause of action. *See* 13 C. Wright,

A. Miller & E. Cooper, *Federal Practice and Procedure* § 3562, at 403 (1975).

could not establish a basis for jurisdiction by anticipating the raising of these defenses. *See Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3566 (1975).

In any event, there is a line of cases in this Circuit, decided after *Gully, Russell,* and *Moore,* which has cited the *Smith* case approvingly. *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486, 492 (2d Cir. 1968); *T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *Sweeney v. Abramovitz,* 449 F.Supp. 213, 214 (D.Conn. 1978); *Dal-Bac (Pty.), Ltd. v. Firma Astorwerk Otto Berning & Co.,* 244 F.Supp. 513, 515 (S.D.N.Y.1965); *Ostow & Jacobs, Inc. v. Morgan-Jones, Inc.,* 180 F.Supp. 38, 42–43 (S.D.N.Y.1959). *See also McFaddin Express, Inc. v. Adley Corp.,* 346 F.2d 424 (2d Cir. 1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966) (follows *Harms* ); *Rosenthal & Rosenthal, Inc. v. Aetna Casualty & Surety Co.,* 259 F.Supp. 624 (S.D.N.Y.1966) (same).

In *McFaddin Express, Inc. v. Adley Corp., supra,* 346 F.2d at 426, the Second Circuit reformulated the test for determining the existence of a federal question as depending on

> whether the complaint is for a remedy expressly granted by an act of Congress or otherwise "inferred" from federal law, or whether a properly pleaded "state-created" claim itself presents a "pivotal question of federal law," for example because an act of Congress must be construed or " 'federal common law' govern[s] some disputed aspect" of the claim.

While the principles enunciated in the *Smith* case may still be viable, this Court does not believe that they are applicable here. The *Smith* doctrine is predicated upon the presence of a controversy involving a pivotal question of federal law, and it can properly be said that a question of that nature is presented only if the right or immunity asserted by the plaintiff is "such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First National Bank, supra,* 299 U.S. at 112, 57 S.Ct. at 97. *See also First National Bank v. Williams,* 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690 (1920); *Local Division No. 714 v. Greater Portland Transit District,* 589 F.2d 1, 5 (1st Cir. 1978). Stated somewhat differently, the Complaint must reveal a "dispute or controversy respecting the validity, construction, or effect of . . . [a law of the United States], upon the determination of which the result depends." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 677, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974); *Shulthis v. McDougal,* 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912).

New York Banking Law § 353 requires a licensed lender to make all the disclosures required by the TILA and the regulations promulgated thereunder, and, if a violation of § 353 occurs, the underlying loan contract is rendered void by Banking Law § 358. However, because of the drastic sanction imposed by this provision, the New York courts have held that the State Banking Law is to be more strictly construed than the Federal TILA. In *Public Loan Co. v. Hyde,* 47 N.Y.2d 182, 417 N.Y. S.2d 238, 390 N.E.2d 1162 (1979), the New York Court of Appeals recently held that a lender's failure to disclose the UCC's ten-day limitation on the acquisition of a security interest in after-acquired consumer goods violates the Federal TILA, but refused to void the loan under the State Banking Law. The Court of Appeals adopted the reasoning of the Appellate Division, Third Department, which stated:

> Turning lastly to defendants' counterclaims under sections 353 and 358 of the New York Banking Law, we conclude that Special Term correctly found them to be lacking in merit. While section 353 incorporates the Federal Truth in Lending Act and Regulation Z to the extent of requiring the disclosure of all items re-

quired to be disclosed by said act and regulation, the penalty for a violation of section 353 under State law is much more severe than the penalty provided in the federal statute. Pursuant to section 358, one who violates section 353 is guilty of a misdemeanor. This results in the invalidation of the underlying debt which is, thereby, rendered uncollectible. Contrary to the situation under the Federal Truth In Lending Act wherein the disclosure requirements involving possible civil penalties are liberally construed in favor of the borrower (*Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318), we would, in light of the extreme penalty, more strictly interpret State law. In order for the drastic sanctions under section 358 to be imposed, the violation of section 353 must be "clearly within the plain intention of the statute" (*Di Nome v. Personal Finance Co. of N.Y.,* 291 N.Y. 250, 253, 52 N.E.2d 117, 118). In our view, the improper disclosure statement here was not so blatant or substantial a violation of section 353 as to warrant the total invalidation of the debt.

63 A.D.2d 193, 406 N.Y.S.2d 907, 909. Since the State Banking Law is to be more strictly construed than the Federal TILA, there will be situations where a violation of state law will not be found even though federal law has been violated. Hence, the result of the controversy will not invariably turn upon the proper construction to be given to a federal statute, and, therefore, it cannot be said that the right asserted by the plaintiffs under state law will necessarily be supported if the laws of the United States are given one construction or effect and defeated if they receive another.

Accordingly, plaintiffs' claims asserted under the New York State Banking Law cannot properly be characterized as ones arising under federal law within the meaning of 28 U.S.C. § 1337.[27]

## B. PENDENT JURISDICTION

At an earlier stage of the proceedings, defendant moved for a judgment on the pleadings dismissing the State Banking Law claims on the ground that Banking Law §§ 353, 358 violated the New York State Constitution in various respects.[28] Judge Edmund Port denied this motion from the bench on August 23, 1976, and, at that time, assumed pendent jurisdiction over plaintiffs' state law claims.

Defendant now asks this Court to decline pendent jurisdiction over the state law claims of the unnamed class members, arguing that, while pendent jurisdiction over Count II might be permissible in an individual suit, it would be an abuse of discretion in a class action. Plaintiffs maintain that the propriety of exercising pendent jurisdiction in this case was determined by Judge Port, and is not open for relitigation.

■ It is well established that the question of pendent jurisdiction is open throughout the litigation, *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Maltais v. United States,* 439 F.Supp. 540, 550 (N.D.N.Y.1977); *Abdelnour v. Coggeshall & Hicks,* 287 F.Supp. 135, 137 (S.D.N.Y.1968), and this Court believes that it is appropriate to re-examine that question in light of plaintiffs' motion for class certification. At the time

27. In two prior cases, parties attempted to bring in federal court class actions alleging violations of New York statutes which incorporate the requirements of the Federal TILA. *Perry v. Beneficial Finance Co., supra* (Banking Law § 353); *Wesley v. John Mullins & Sons, Inc.,* 444 F.Supp. 117 (E.D.N.Y.1978) (Personal Property Law § 413(11)(d)). In both suits, the plaintiffs relied solely upon pendent jurisdiction as a predicate for their state-law claims, and did not allege that those claims arose under federal law in a jurisdictional sense. However, the court in *Wesley* did note that such an

assertion, if it had been made, would have been rejected. 444 F.Supp. 118 n. 4.

28. Defendant's principal contention was that the incorporation by reference, in Banking Law § 353, of the Federal TILA and regulations promulgated thereunder, was impermissible under Article III, §§ 1, 16 of the Constitution of the State of New York. Defendant also argued that the provisions of the Banking Law violated Article I, §§ 6, 11 and Article IV, § 8 of the State Constitution.

that Judge Port rendered his decision on the constitutionality of the State Banking Law provisions, a motion for class certification had not yet been made, and the propriety of entertaining the claims of the unnamed class members was not before the Court. It is clear from a reading of the transcript of the proceedings held before Judge Port on August 23, 1976 that issues concerning the maintenance of Count II (or Count I) as a class action were not considered at that time.[29]

Traditionally, pendent jurisdiction has concerned the situation where a purported pendent claim involves the same parties as the federal claim on which jurisdiction is based. *United Mine Workers v. Gibbs, supra.* However, the situation presented here is somewhat different. Since this Court has refused to certify Count I as a class action, the passive class members in this case do not have a federal cause of action before the Court, and, therefore, the certification of the pendent claims as a class suit would result in the adjudication of the claims of some persons who are not otherwise within the jurisdiction of the Court. The propriety of exercising jurisdiction in these circumstances involves a consideration of the doctrine of pendent-party jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Almenares v. Wyman,* 453 F.2d 1075, 1083–86 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

■ A two-step process is followed to determine the proper exercise of either ordinary pendent jurisdiction or pendent-party jurisdiction. First, the Court must determine whether it has the power to hear the pendent claims. If power is found to exist, then the Court must balance various factors to decide whether, as a matter of

discretion, the pendent claims should be heard. *Moor v. County of Alameda,* 411 U.S. 693, 711–17, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *United Mine Workers v. Gibbs, supra,* 383 U.S. at 725–29, 86 S.Ct. 1130; *Evans v. Buchanan,* 468 F.Supp. 944, 956 (D.Del.1979); *Wood v. Standard Products Co.,* 456 F.Supp. 1098 (E.D.Va.1978).

In *United Mine Workers v. Gibbs, supra,* a case where a pendent claim was asserted by the plaintiff against a defendant already in federal court on a federal cause of action, the Court defined the scope of judicial power in terms of Article III, § 2 of the Constitution. The Court stated that the Constitutional power to hear state claims exists where the state and federal claims derive from a "common nucleus of operative fact" and the relationship between the claims is such that the plaintiff would "ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138.

In *Aldinger v. Howard, supra,* the Supreme Court considered the question of joining on a state-law claim, a party over which there was no independent basis of federal jurisdiction.[30] The Court indicated that statutory law as well as the Constitution could serve to limit a federal court's power to hear a claim involving a pendent party. The Court stated,

If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

---

**29.** At the proceedings of August 23, 1976, the attorney for plaintiffs stated that issues concerning the suitability of the case for class action treatment were not then before the Court (Transcript of August 23, 1976, at 21–23), and it is evident, from the Court's remarks, that Judge Port did not regard such questions as being before him at that time (Transcript of August 23, 1976, at 24, *see also* at 4, 22).

**30.** While *Aldinger* involved the joinder of pendent claims against an additional defendant, its analysis has been applied to the joinder of claims asserted by an additional plaintiff who could not otherwise sue in federal court. *See Santoni v. United States,* 450 F.Supp. 608 (D.Md.1978); *Voytko v. Ramada Inn,* 445 F.Supp. 315, 326 (D.N.J.1978).

427 U.S. at 18, 96 S.Ct. at 2422. In *Aldinger,* where the suit was brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), the Court rejected the exercise of pendent-party jurisdiction over a municipal corporation, finding that Congress had intended to exclude municipalities from liability in a § 1983 action. It said that the scope of the "civil action" over which the district courts have been given statutory jurisdiction by § 1343(3) should not be read so broadly as to bring municipalities back within the jurisdiction of the federal courts merely because the facts also give rise to an ordinary civil action against them under state law. According to the Court, the reach of pendent-party jurisdiction "should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress." 427 U.S. at 17, 96 S.Ct. at 2421 (emphasis in original.)

While *Aldinger v. Howard, supra,* has been overruled by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) with respect to the question of the amenability of a municipal corporation to suit under § 1983, the Supreme Court has indicated that *Aldinger* is still a viable precedent concerning the analytical framework employed to examine questions of pendent jurisdiction. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372–73 n. 12, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

 This Court believes that Congress has by implication negated the existence of federal-court jurisdiction over the State Banking Law claims asserted on behalf of the passive class members in this case. Congress has placed a ceiling upon recovery in a TILA class action to protect creditors from catastrophic judgments,[31] and the permissible scope of pendent-party jurisdiction should be construed in light of this ceiling. The penalty provided by state law is substantially more severe than that imposed by federal law, and the granting of classwide relief on claims asserted under the State Banking Law—to enjoin the collection of principal, interest, or charges on all loan contracts consummated for a one-year period—might very well cause financial ruin to a creditor. The granting of such relief would frustrate Congress' intent to bar such annihilating punishment by the placing of a limit on class recovery.[32] *See Perry v. Beneficial Finance Co., supra,* 81 F.R.D. at 498; *Wesley v. John Mullins & Sons, Inc.,* 444 F.Supp. 117, 120–21 (E.D.N.Y.1978). Hence, the Court finds that it lacks power to entertain the state law claims of the unnamed class members.

 Even assuming the existence of judicial power, the Court, in its discretion, would refuse to exercise pendent-party jurisdiction in the circumstances presented here. The factors which should be considered in determining the discretionary exercise of pendent-party jurisdiction or ordinary pendent jurisdiction are essentially the same. *Moor v. County of Alameda, supra,* 411 U.S. at 715–16, 93 S.Ct. 1785; *Almenares v. Wyman, supra,* 453 F.2d at 1085;

---

**31.** *See* pages 574–575 and note 3 *supra.*

**32.** A considerable period of time has passed since the commencement of the present action, and, therefore, it is quite possible that a substantial majority of the loans, which were made to members of the purported class, have been repaid by now. Since New York law does not allow a debtor to recover payments voluntarily made on the loans but only permits an injunction barring the collection of future payments by the creditor, *Conrad v. Home & Auto Loan Co.,* 53 A.D.2d 48, 385 N.Y.S.2d 979 (4th Dept. 1976), the actual impact on the defendant of exercising jurisdiction over the pendent claims, at this time, would be considerably less severe than if a ruling on class certification had been made much sooner. However, the Court must be concerned with the potential recovery presented by the circumstances of this case. *Cf. Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 224 n. 21 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). If the Court were to look at what the actual recovery would be (i. e., the number of loans, yet unpaid, that would be invalidated), jurisdiction would be assumed over the passive class members' Banking Law claims only if there had been a substantial delay in obtaining a ruling upon class certification. This would not provide a principled basis for decision since Rule 23(c)(1) provides that the Court shall determine whether a suit is to be maintained as a class action as soon as practicable after the commencement of the action.

*Maltais v. United States, supra,* 439 F.Supp. at 549. The relevant factors include comity, judicial economy, convenience and fairness to the litigants, the character of the federal and nonfederal claims presented, and the possibility of jury confusion. *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. 1130; *Rosado v. Wyman,* 397 U.S. 397, 404–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Federman v. Empire Fire & Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir. 1979); *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 561–62 (2d Cir. 1978); *Maltais v. United States, supra,* 439 F.Supp. at 549–50.

■ In this case, judicial economy and convenience to the litigants would be served by hearing the state and federal claims in the same forum as the claims under both laws are based upon the alleged inadequacy of disclosure of the same terms in a standard-form promissory note. Also, there is not likely to be any jury confusion, since the questions presented here can probably be decided as a matter of law by the Court. However, other factors weigh heavily in favor of declining jurisdiction over the pendent claims of the passive class members. If class certification had been granted, the total recovery on the TILA Count would have been only about $1,000.00 (and even if plaintiffs' estimates were accepted, only about $10,000.00 to $20,000.00). The total recovery, if classwide relief were granted on the State Banking Law claims, could potentially be much larger. Since the motion for class certification of Count I has been denied, the disparity between the relief awarded on the two counts would be even greater if the Court were to assume jurisdiction over the state-law claims of the unnamed class members. It is proper to decline pendent jurisdiction in a situation such as this where the state claims predominate as to the comprehensiveness of the remedy sought. *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. 951, 954 (S.D.Fla.1978); *Creel v. Lawler,* 462 F.Supp. 118, 122–23 (N.D.Tex.1978); *Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. 213, 215 (S.D.N.Y.1975), *aff'd,* 538 F.2d 312 (2d Cir. 1976).

■ Also, as previously discussed, Congress' intent to limit class recovery in cases of this nature would be frustrated by allowing classwide relief with respect to the Banking Law claims. This factor, which affects the power of the Court, may also be considered in the discretionary exercise of jurisdiction. *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1173 (E.D. Mich.1978); *Hannon v. Continental National Bank,* 427 F.Supp. 215, 218 (D.Colo.1977); *Kerby v. Commodity Resources, Inc.,* 395 F.Supp. 786, 790 (D.Colo.1975); *Van Hoomissen v. Xerox Corp.,* 368 F.Supp. 829, 840 (N.D.Cal.1973).

Another factor which supports the Court's refusal to assume pendent-party jurisdiction to adjudicate the state law claims of the unnamed class members is comity. While the matter presented here has not been specifically addressed by the New York courts, it appears likely that the state courts would not permit claims asserted under Banking Law §§ 353, 358 to be maintained as a class action. *See Perry v. Beneficial Finance Co., supra,* 81 F.R.D. at 497–98. New York CPLR § 901(b) provides:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

The sanction imposed upon a lender by Banking Law § 358 has been characterized by the New York courts as a penalty, *Public Loan Co. v. Hyde,* 63 A.D.2d 193, 406 N.Y. S.2d 907, 909 (3d Dept. 1978), *aff'd,* 47 N.Y.2d 182, 417 N.Y.S.2d 238, 390 N.E.2d 1162 (1979); *Conrad v. Beneficial Finance Co.,* 57 A.D.2d 91, 394 N.Y.S.2d 923, 927 (4th Dept. 1977), and the State Banking Law does not specifically authorize class actions.

Plaintiffs contend that, because of the specific language used in § 358, a suit under that provision is not an action to "recover" a penalty. Section 358 renders the loan contract void, and bars the lender from

collecting any principal, interest, or charges. Thus, according to plaintiffs, while a penalty is imposed upon the lender, a suit brought by a debtor is not one to "recover" this penalty. This Court doubts that the distinction advanced by plaintiffs would be accepted by the New York courts.[33] While the parties who bring an action under Banking Law § 358 will not receive an award of money damages, what they will receive is substantially the same—the release from liability on a debt owed to the lender.[34] Moreover, the view advanced by plaintiffs is inconsistent with the legislative intent of CPLR § 901(b). That provision was designed to prevent the imposition upon defendants of annihilating punishment for certain statutory violations, McLaughlin, Practice Commentary to New York CPLR § 901(b) at 327–28 in McKinney's Consolidated Laws of New York, Book 7B; Note, *Finding a Forum for the Class Action: Issues of Federalism Posed by Recent Limitations on Use of Federal Courts*, 28 Syr.L.Rev. 1009, 1032 & n. 106 (1977); *see also Goldman v. Garofalo*, 96 Misc.2d 790, 409 N.Y.S.2d 684, 687 (S.Ct. Nassau Co.1978), and Banking Law § 358 is such a provision that could have a devastat-

ing effect upon a creditor if class relief were permitted.

In addition, allowing classwide relief in federal court for claims asserted under the New York State Banking Law would be unfair to a defendant since he probably would not be subjected to the same liability in state court.

If this Court had permitted class certification of the TILA Count, the individual passive class members would each have had a federal cause of action before the Court, and the issue presented with respect to the State Banking Law claims would have been one of ordinary pendent jurisdiction rather than pendent-party jurisdiction. If such had been the case, the result here would not have been different.

In *Aldinger*, the Supreme Court emphasized the need to examine the jurisdiction-conferring statute to determine a federal court's power to exercise pendent-party jurisdiction, but there are indications in the Court's opinion that, in certain circumstances, statutory law might also operate as a limitation on the power of a federal court to entertain a nonfederal claim under ordinary pendent jurisdiction.[35] *See* Comment, *Al-*

---

**33.** Plaintiffs' reliance upon *Zachary v. R. H. Macy & Co.*, 39 A.D.2d 116, 332 N.Y.S.2d 425 (1st Dept.), *rev'd on other grounds*, 31 N.Y.2d 443, 340 N.Y.S.2d 908, 293 N.E.2d 80 (1972) and *Kovarsky v. Brooklyn Union Gas Co.*, 279 N.Y. 304, 18 N.E.2d 287 (1938) is misplaced. First, neither decision represents a construction of CPLR § 901(b) as they were both rendered prior to the adoption of that provision. Second, the courts in *Zachary* and *Kovarsky* permitted the suits to be maintained as class actions for declaratory and injunctive relief only to the extent of prohibiting the future imposition of unlawful charges. In the present case, on the other hand, plaintiffs seek to enjoin the collection by defendant of future payments of money. Third, it appears that the prohibition on the future imposition of charges in *Zachary* and *Kovarsky* cannot properly be regarded as the creation of a penalty since the charges imposed there were, in themselves, illegal. In the present case, on the other hand, the type of loan agreements entered into by defendant and the members of the class are not, in themselves, illegal, but rather the loan contracts are rendered void by defendant's failure to make certain required disclosures.

**34.** The meaning of the term "recover a penalty" is not limited to the obtaining of a money judgment. Black's Law Dictionary defines the word "recovery" as follows:

> To get or obtain again, to collect, to get renewed possession of; to win back; to regain, as lost property, territory, appetite, health, courage. In a narrower sense, to be successful in a suit, to collect or obtain amount, to have judgment, to obtain a favorable or final judgment, to obtain in any legal manner in contrast to voluntary payment. *Black's Law Dictionary* 1440 (4th ed. 1968).

**35.** The Court in *Aldinger* stated that the exercise of pendent jurisdiction in *Gibbs* and its predecessors (cases which did not involve pendent parties) was consistent with "the particular grant of subject-matter jurisdiction upon which the federal claim against the defendant in those cases was grounded" 427 U.S. at 14, 96 S.Ct. at 2420, thus implying that the result would have been otherwise if Congress had expressly or by implication negated the existence of pendent jurisdiction. Also more recently, in *Owen Equipment & Erection Co. v. Kroger, supra*, a case where the plaintiff attempted to assert a claim against a party al-

*dinger v. Howard and Pendent Jurisdiction,* 77 Col.L.Rev. 127, 147–52 (1977). As previously discussed, the assertion of jurisdiction over the pendent claims of the passive class members here would frustrate Congress' attempt to limit significantly the class recovery in a TILA action, and, therefore, judicial power would be lacking.

Also, the various discretionary factors considered with respect to pendent-party jurisdiction would apply equally to ordinary pendent jurisdiction, and so assuming the existence of power, it would have been proper to decline jurisdiction.[36]

In *Perry v. Beneficial Finance Co., supra,* the court certified a TILA class action, but declined to exercise pendent jurisdiction over the claims of the unnamed class members under New York Banking Law §§ 353, 358 "in view of the countervailing state and federal policies which limit the availability and amount of class relief." 81 F.R.D. at 498.

In *Wesley v. John Mullins & Sons, Inc., supra,* the plaintiff brought a class suit, alleging violations of the TILA and the New York Retail Installment Sales Act. New York Personal Property Law § 401 *et seq.* The Retail Installment Sales Act incorporates the TILA disclosure requirements, and provides that in the event of a violation, the buyer is entitled to recover an amount equal to the credit service charge and any delinquency, collection, extension, deferral, or refinance charge imposed. The court granted a motion to decertify the class action with respect to the Retail In-

stallment Sales Act, and dismissed the pendent claims of the passive class members stating,

> In view of the fact that the damages recoverable under the state class claim far outweigh those of the federal claims, the continuance of such a state class action not only offends the policies of both the federal and state governments to limit potentially overwhelming penalty recoveries, but also permits a plaintiff by a procedural device to do that which is forbidden by both federal and state law. We believe that pendent jurisdiction was never intended to permit such a result.

444 F.Supp. at 120 (footnote omitted). Such reasoning is applicable to the present case.[37]

Accordingly, plaintiffs' motion for class certification is denied in all respects, and the class action allegations are stricken from the Complaint. Plaintiffs' motion for leave to amend their Complaint is also denied.

It is so ordered.

---

ready before the district court (the third-party defendant), the Supreme Court stated that "statutory law as well as the Constitution may limit a federal court's jurisdiction over nonfederal claims." 437 U.S. at 372, 98 S.Ct. 2402.

**36.** Plaintiffs' reliance upon *Ives v. W. T. Grant Co.,* 522 F.2d 749 (2d Cir. 1975) to support the exercise of pendent jurisdiction over the claims of the unnamed class members here is misplaced. In *Ives,* unlike the present case, Congressional policy to limit class recovery in a TILA action was not directly implicated by the certification of the pendent claims for classwide injunctive relief since the statutes involved on the pendent claims in *Ives* (Connecticut's usury laws) were not as closely related to the TILA as are the statutes involved on the

pendent claims here (provisions of New York Banking Law requiring the accurate disclosure of credit terms). A usury statute is designed to remedy a different substantive wrong than are the TILA and the Banking Law provisions in question here. Moreover, in *Ives,* unlike the present case, there was no indication of a state policy barring the maintenance of class actions for the type of relief requested.

**37.** This Court's refusal to assume pendent jurisdiction over the state law claims of the passive class members does not affect Judge Port's earlier decision to exercise pendent jurisdiction over the Banking Law claims of the named plaintiffs.